## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:_____

PAUL F. CAMPOS,

      Plaintiff,

v.

UNIVERSITY OF COLORADO, through the Regents of the University of Colorado, a body corporate; and
LOLITA BUCKNER INNISS, Dean of the University of Colorado School of Law

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Paul F. Campos, through his counsel Hutchinson Black and Cook, LLC, files this Complaint and Jury Demand and avers as follows:

### <u>INTRODUCTION</u>

1. Professor Paul F. Campos, a highly accomplished professor of law at the University of Colorado-Boulder, was informed in 2022 that a pay study the University conducted concluded he was being underpaid because of his Latino ethnicity. Shortly thereafter, he was notified by his department that he was receiving a very low annual review score, which appeared to him to be the consequence of him having taken paternity leave during the prior year.

2. As a longstanding and dedicated member of the University community, and in a good-faith belief that reporting misconduct would change things for the better, Professor Campos addressed these issues with his dean, Defendant Lolita Buckner Inniss. When Dean Inniss refused to help, he raised them formally with the University's in-house legal counsel and filed a complaint with the University's Office of Institutional Equity and Compliance.

3.     The response to these complaints of discrimination reflects classic – and illegal – retaliation. Dean Inniss, in writing, explained to Professor Campos that she was stripping him of an especially valuable committee assignment because he had reported discrimination and asserted his legal rights. The University promised him protection while the Office of Institutional Equity and Compliance investigated this retaliation, by reassigning him to a different supervisor, but that turned out to be a sham, with no reassignment taking place. And in a coup de grâce, the University further retaliated with respect to Professor Campos' subsequent raise, giving him a below-average pay increase, despite his high performance during the relevant evaluation period.

## PARTIES

4.     Plaintiff Campos is a Professor of Law at the University of Colorado ("CU Law") and a resident of Boulder, Colorado.  Professor Campos joined the faculty of CU Law in 1990 as an Associate Professor, quickly received tenure, and then became a full professor in 1997. Professor Campos was named the first director of CU Law's Byron R. White Constitutional Law Center. In the 33 years he has been at CU Law, Professor Campos has had an academic career most notable for impressive scholarly accomplishment.

5.     Professor Campos is a leader in his field of study. For three years he has been selected as one of the 25 most influential people in legal education by *National Jurist*. His scholarship initially focused on constitutional law and legal theory. He continues his constitutional law scholarship, and today he is also well known for his work critiquing the American legal educational system.  He is a prolific writer, with five published books, including his most recent book, which was published by the University of Chicago Press last fall. He also regularly publishes articles in both academic and general-audience publications.

6.     Defendant University of Colorado (the "University") is an institution of higher education with its largest campus in Boulder, Colorado. The University of Colorado is governed

through its Board of Regents, which is a body established by the Colorado Constitution, and which serves as the body corporate for the University of Colorado. The University of Colorado has over 35,000 employees and is the third largest employer in the state.

7. Defendant Lolita Buckner Inniss ("Dean Inniss") is the Dean and Provost's Professor of Law at CU Law in Boulder, Colorado. She has held that position since approximately July 1, 2021. She states she has expertise in "race and law" and "critical discourse analysis," among other topics of academic study.

## JURISDICTION AND VENUE

8. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") and also seeks redress for violation of Professor Campos's civil rights as protected by federal statute, 28 U.S.C. § 1981. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e)(1) because all of the events giving rise to the claims occurred within the District of Colorado.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff filed a charge of discrimination against the University with the Colorado Civil Rights Division ("CCRD") on October 6, 2022, for dual filing with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Charge of Discrimination dated October 12, 2022. Plaintiff has exhausted the CCRD and EEOC charging processes. He received right-to-sue letters from CCRD on April 20, 2023, and on behalf of the EEOC on May 16, 2023.

## FACTUAL ALLEGATIONS

**A. The University Has a Legacy of Discrimination Against Latinos Including by Paying Latino Faculty Less Than Similarly Situated White Professors.**

3

11.     Although Colorado's population is approximately 22% Latino and CU Law has more than three dozen full-time professors of law, Professor Campos is the only senior member of the CU Law faculty who is Latino.

12.     In 2021, as part of its efforts to comply with the Colorado Equal Pay for Equal Work Act, the University conducted a salary study to identify discriminatory pay disparities. The study included a detailed statistical analysis of all faculty members similarly situated to determine, according to the University, "pay equity disparities" based on "gender and race and ethnicity."

13.     The University's data analysis was conducted by the University Provost's Office of Data Analytics, with input from University Human Resources personnel, and ultimately with individual input from deans and other University leaders to be sure the identified discrepancies were based solely on prohibited discrimination and not attributable to non-discriminatory causes.

14.     When conducting its analysis, the University considered all regular faculty positions, banded by type of faculty position, and grouped into substantially similar job families by department, division, and school/college. The University then used a statistical model to determine predicted salaries using variables including years since highest degree, years in rank, discipline, and other inputs.

15.     The University recognized that various qualitative differences could explain some of the identified pay disparities using this methodology, such as seniority issues, whether a retention bonus had been required to keep a faculty member at the University, the faculty member's department or program, the faculty member's average merit scores on their annual evaluations, etc. The University controlled for these purportedly non-discriminatory variables by using the University's best quantitative and qualitative judgment for each faculty member to determine the amount of pay disparity for any faculty member that could be attributed solely to discrimination based on gender, race, or ethnicity.

4

16.     Effective January 1, 2022, the University increased pay prospectively, but not retroactively, for faculty members who the University determined it had been underpaying based on gender, race, or ethnicity, after controlling for all non-discriminatory differences in pay. With regard to backpay, the University knowingly and intentionally chose to ignore that past discrimination, in direct contradiction to the remedial obligations and the plain language of the Colorado Equal Pay for Equal Work Act.

**B.  The University Discriminates Against Professor Campos Because He Is Latino.**

17.     Through this pay study, the University found that Professor Campos' salary was lower than the salaries of his white colleagues, when controlling for all other factors except for race and ethnicity. According to the University's own data analysis, the University was underpaying Professor Campos by $13,756 each year.

18.     In reality, the University was underpaying Professor Campos by a substantially larger amount. That is because the University's pay study did not account for the salary faculty members receive from endowed professorships. Professor Campos' analysis of endowed professorships from June 2022 showed that they were held by every single tenured member of the CU Law faculty with anything even close to Professor Campos' level of seniority, with the exception of CU Law's sole Latino senior faculty member, Professor Campos himself.[1]

19.     The failure of CU Law to award Professor Campos an endowed professorship is particularly egregious in light of the fact that, between 2015 and 2021, Professor Campos was cited in academic literature more frequently than any of his colleagues, including any of his colleagues

---

[1] As of June 2022, the ten most senior members of the CU Law faculty were, in order of seniority, Christopher Mueller, Mark Loewenstein, Pierre Schlag, Mark Squillace, James Anaya, Paul Campos, Peter Huang, Philip Weiser, Sarah Krakoff, and Ahmed White.  Every person in this group other than Prof. Campos had an endowed professorship.  In addition, several more junior members of the faculty also hold endowed professorships.

with such endowed professorships. Quite simply, there is no race-neutral explanation for the failure of CU Law to increase Professor Campos' pay through an endowed professorship.

**C.  The University Discriminates Against Prof. Campos For Taking Paternity Leave.**

20.     On May 10, 2022, Professor Campos received his annual rating for calendar year 2021. He received a rating of 3 out of 5. Professor Campos was shocked by this low rating, because by all standard metrics of evaluation he had had a particularly excellent year in 2021.

21.     Professor Campos asked both Dean Inniss and the faculty committee that made annual performance rating recommendations to Dean Inniss for an explanation of this rating. The chair of the committee, Prof. Pierre Schlag, refused to provide any explanation for the rating, while Dean Inniss told Prof. Campos that she was not going to make any independent evaluation of the committee's recommendation, in violation of the Rules of the Law School which require the Dean to do so.

22.     On the University rating scale, a 3 out of 5 is an extremely low score. Based on data Professor Campos received from an open records request, he learned that from 2017 through 2021, 42.3 percent of CU Law faculty received a rating of 5 out of 5, 55.4 percent received a rating of 4 out of 5, and only 2.3 percent received a rating of 3 out of 5 or lower.  (There were no ratings lower than 3.)

23.     Per University rules, the Law School is supposed to base faculty ratings for tenured and tenure-track research faculty on three components: research, teaching, and service.

24.     Professor Campos' research justified a rating of 5 out of 5 for 2021. In 2021, Prof. Campos put a book into press with one of the academy's most prestigious publishers. He produced a major law review article about the Former Presidents Act that was downloaded hundreds of times by other scholars even prior to publication. And he published a 7,000-word version of that latter research project in a national magazine, which led to subsequent stories about the project in two

national newspapers. On information and belief, by all objective measures, Prof. Campos had the single most impressive year for research of any law school faculty member in 2021.

25.    Likewise, Professor Campos' service to the University during 2021 merited an outstanding rating. During that year, Professor Campos served on the Faculty Evaluations Committee, where he was given primary responsibility for assembling and presenting to the faculty the tenure file of a junior colleague. He took on this extremely challenging and time-consuming task because the Dean was unable to find anyone else willing to do it. Particularly commendable is that Professor Campos took on this assignment even though he had, because he was on parental leave in the spring and on sabbatical in the fall, a right pursuant to the University's own policies to decline any and all committee assignments, as indeed almost all faculty members who are on leave routinely do. Thus, given his extraordinary service beyond what was required for a professor on paternity leave, his rating should have reflected as much.

26.    With regard to the third evaluation factor, classroom instruction, because he was on leave, Professor Campos should not have been evaluated in regard to teaching in 2021. As noted above, Professor Campos was on parental leave for one semester and sabbatical for another semester. On information and belief, Professor Campos' overall rating of 3 out of 5 was weighed down by him not teaching in 2021, in retaliation for him taking parental leave.

**D.  Professor Campos Reports Discrimination to the University.**

27.    On May 23, 2022, Professor Campos met with Dean Inniss to discuss his rating. He explained to Dean Inniss that he believed it reflected, among other issues, racial bias based on his Latino ethnicity, as well as punishment for taking paternity leave.

28.    Dean Inniss refused to take action to revise Professor Campos' rating even though the University's faculty rules specifically authorized her to do so. Indeed, she flatly refused to

review the recommendation despite the fact that undertaking such a review is one of the Law School Dean's core job responsibilities.

29.     Professor Campos then complained in writing about this discrimination.  By letter from his attorney to the University's in-house legal counsel sent on May 27, 2022, counsel for Professor Campos explained that Professor Campos "has been mistreated both based on his Latino ethnicity and because he has criticized the misconduct of university officials." The letter further explained that the University's own pay study documented Professor Campos was subject to pay discrimination because he is Latino, and he was further discriminated against based on his Latino ethnicity by being denied an endowed professorship. Finally, the letter explained that Professor Campos had been given a 3 out of 5 rating notwithstanding the fact that he took paternity leave, was on sabbatical, had an exemplary record of publications, and had served on the Faculty Evaluations Committee.

30.     The May 27, 2022, letter further stated that Professor Campos anticipated the "need to file litigation to remedy his rights," and requested that the University preserve all relevant documents.

**E.  The University and Dean Inniss Retaliate.**

31.     Two weeks after Professor Campos' May 23, 2022, meeting with Dean Inniss reporting discrimination and requesting that his rating be revised, Professor Campos received an email from an Associate Dean for CU Law, addressed to the entire CU Law faculty, providing committee assignments for the upcoming year. The list of assignments omitted Professor Campos entirely from any committee assignments. When Professor Campos followed up with the Associate Dean, the Associate Dean told him that it was "not my call."

32.     When Professor Campos pressed to understand what happened, the Associate Dean stated that Professor Campos had initially been placed on the Faculty Evaluations Committee, as

Professor Campos expected would happen, but the list then went back and forth within the Dean's Office and due to a "mix up" Professor Campos was left off the final list. After providing this explanation, the Associate Dean restored Professor Campos to the Faculty Evaluation Committee, and Professor Campos immediately got going on evaluation work for that committee by assembling a group of potential outside evaluators for a promotion case.

33.    When Dean Inniss learned that Professor Campos had been restored to the Faculty Evaluations Committee, and when alerted to the letter sent by Professor Campos' counsel to the University's counsel reporting discrimination and asking for a litigation hold, Dean Inniss immediately removed Professor Campos from the committee in retaliation for having reported discrimination.   Remarkably, Dean Inniss – an attorney – wrote Prof. Campos an email in which she stated that she was removing him from the committee because he had reported to her that he had been subjected to discrimination.

34.    Specifically, in an email to Professor Campos and the Associate Dean dated June 8, 2022, Dean Inniss wrote:

> Given your recent communications with me regarding your concerns with the law school evaluation process and your indication of possible litigation, I have removed you from the evaluations committee for the upcoming fiscal year.

35.    Dean Inniss did not place Professor Campos on another committee – she simply stripped him of his committee assignment for the 2022/2023 academic year.

36.    On July 22, 2022, Professor Campos emailed Dean Inniss, explaining that her removal of him from the Faculty Evaluations Committee was harmful to his professional standing at the Law School, asking for her to reinstate him, and further pointing out that she had not provided him with an alternative committee assignment. Dean Inniss did not reply to this email.

37.    Several months later, in response to Professor Campos' complaints about Dean Inniss' conduct, University counsel made the remarkable claim that Professor Campos had not

been damaged because Dean Inniss had placed him on the Law School's Technology Committee. In fact, subsequent to the illegal retaliation by Dean Inniss removing him from the Faculty Evaluations Committee, Professor Campos was never contacted by anyone in the Law School's administration about serving on the Technology Committee, or any other committee.

38.     Dean Inniss' retaliation against Professor Campos for reporting discrimination has injured Professor Campos in several ways. Such injury includes the following:

a.   It deprived Professor Campos of any institutional assignment that he could use to fulfill the requirement for his 2022 annual evaluation for service to the institution;

b.   It deprived him of the right to participate in the core faculty function of evaluating his colleagues for tenure and promotion; and

c.   It damaged his reputation with his colleagues, one of whom was copied on the email above noting Professor Campos' assertion of his rights to remedy discrimination, and others of whom have been informed that Professor Campos was removed from the Faculty Evaluations Committee for 2022-23.

**F.  Professor Campos Reports the Retaliation and Requests Protection.**

39.     On August 8, 2022, Professor Campos reported the misconduct, including the retaliation, to the University's Office of Institutional Equity and Compliance ("OIEC"). He requested an investigation, and that he be protected from further retaliation while the investigation continued.

40.     Professor Campos was told by OIEC that during the pendency of the investigation, he would no longer report to Dean Inniss, and would report instead to Edward Scott Adler, Dean of the Graduate School.

**G.  The University Fails to Protect Professor Campos From Further Retaliation and Fails To Conduct a Full Investigation of Professor Campos' Complaint of Discrimination and Retaliation.**

41.    Less than a month later, however, Professor Campos came to learn that this purported protection was a ruse and that he would be subject to further retaliation and discrimination at the hands of Dean Inniss and her designees.

42.    On September 16, 2022, Professor Campos received an email from Associate Dean Alexia Brunet Marks, copying Dean Inniss, and stating that she and Dean Inniss "decided to remove [Professor Campos] from teaching Property Law" for the spring 2023 semester. Associate Dean Marks and Dean Inniss attempted to justify this decision with the pretextual accusation that it was based on unspecified "racially offensive and gender biased" comments Professor Campos allegedly made to his class during the preceding academic year.

43.    In response to these charged accusations, Professor Campos secured a complete video record of his classes from the prior year and confirmed that no such "racially offensive and gender biased" comments were ever made by him. Indeed, to date, the University has never provided any evidence to Professor Campos that this was anything other than a highly defamatory, damaging, and completely unsubstantiated accusation.

44.    As for OIEC's promise of protection from further retaliation, Professor Campos questioned why Dean Inniss was participating in his supervision at all, notwithstanding the University's assurance that he would be protected from retaliation by having his supervisor reassigned. Professor Campos learned that the promise of a different supervisor during the investigation was fake and an attempt to have Professor Campos believe he was being protected.

45.    Specifically, Dean Inniss has admitted that nobody ever told her that supervisory responsibility for Professor Campos was being transferred to Dean Adler. Dean Inniss first learned

of this supposed reassignment when Professor Campos himself raised this issue in a September 20, 2022, email to OIEC on which Dean Inniss was copied.

46.     On information and belief, Dean Inniss has a pattern and practice of discriminating against and retaliating against other persons of Latino ethnicity at CU Law, including students, faculty, and at least one administrator.

47.     As of the filing of this Complaint, the University has failed to complete its investigation of Professor Campos' OIEC complaint, notwithstanding that more than ten months have passed since Professor Campos lodged his formal complaint. On information and belief, it has failed to take action in an effort to further punish Professor Campos for having reported misconduct.

48.     The discrimination and retaliation against Professor Campos has continued into 2023. In early 2023, Professor Campos learned that he received a 2.8% merit raise based on his 2021 performance even though the average amount available for raises was at least 3% per faculty member. (In reality, the actual pay raise pool was larger, because of funds from endowed professorships that supplement the regular salary pool). No non-discriminatory reason was provided for this below-average merit increase.

### FIRST CAUSE OF ACTION
### Violation of Title VII, 42 U.S.C. § 2000e-2(a)(1)
### Pay Discrimination Based on Race
### (Against the University)

49.     Plaintiff incorporates here by reference all of the preceding paragraphs.

50.     Title VII prohibits an employer from discriminating against an employee with respect to the employee's race.

51.     Professor Campos occupies a position similar to white professors of his tenure at CU Law and at the University.

52.     Based on the University's own pay study, the University has determined based on objective and subjective analysis that it paid Professor Campos less than similarly situated white professors.

53.     Professor Campos occupies a position similar to other senior faculty at CU Law, all of whom are white.

54.     Professor Campos is the only senior faculty member at CU Law who has been denied the additional pay that comes with an endowed professorship.

55.     Circumstantial evidence demonstrates that the University has intentionally paid Professor Campos less than his white colleagues based on racial bias against Latinos.

56.     The University's pay practices have had a disparate impact on Professor Campos based on him being Latino.

57.     As a direct result of the University's actions or inactions, Professor Campos suffered significant economic and non-economic damages in an amount to be determined at trial.

58.     The University's conduct was undertaken with malice or reckless disregard to the federally protected rights of Professor Campos.

**SECOND CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
**Pay Discrimination Based on Race**
**(Against the University)**

59.     Plaintiff incorporates here by reference all of the preceding paragraphs.

60.     Pursuant to Section 1981, all persons "shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

61.     Section 1981 protects racial minorities from intentional pay discrimination.

62.     Professor Campos is Latino.

13

63.     Professor Campos occupies a position similar to white professors of his tenure at CU Law and at the University.

64.     Based on the University's own pay study, the University has determined based on objective and subjective analysis that it paid Professor Campos less than similarly situated white professors.

65.     Professor Campos occupies a position similar to other senior faculty at CU Law, all of whom are white.

66.     Professor Campos is the only senior faculty member at CU Law who has been denied the additional pay that comes with an endowed or named professorship.

67.     Circumstantial evidence demonstrates that the University has intentionally paid Professor Campos less than his white colleagues based on race discrimination against Latinos.

68.     As a direct result of the University's actions or inactions, Professor Campos suffered significant economic and non-economic damages in an amount to be determined at trial.

69.     The University's conduct was engaged in with malice or reckless disregard to the federally protected rights of Professor Campos.

### THIRD CAUSE OF ACTION
**Violation of Title VII, 42 U.S.C. § 2000e-2(a)(1)**
**Retaliation**
**(Against the University)**

70.     Plaintiff incorporates here by reference all of the preceding paragraphs.

71.     Title VII prohibits retaliation for reporting discrimination.

72.     Professor Campos complained to the University that he was being discriminated against because he is Latino and because he took parental leave.

73.     To punish Professor Campos for his complaints of discrimination, the University and Dean Inniss removed him from the Faculty Evaluations Committee, trumped up false

allegations of purportedly racist and sexist classroom comments by him, publicized these false allegations, punished Professor Campos by removing him from teaching Property Law; and gave him a reduced merit increase in 2023.

74.    As a direct result of the University's actions or inactions, Professor Campos suffered significant economic and non-economic damages in an amount to be determined at trial.

75.    The University's conduct was engaged in with malice or reckless disregard to the federally protected rights of Professor Campos.

**FOURTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
**Retaliation**
**(Against the University and Dean Inniss)**

76.    Plaintiff incorporates here by reference all of the preceding paragraphs.

77.    Retaliation for reporting race discrimination is prohibited by Section 1981.

78.    Professor Campos is Latino.

79.    Professor Campos complained to Defendants that he was being discriminated against because he is Latino and because he took parental leave.

80.    To punish Professor Campos for his complaints of discrimination, the University and Dean Inniss removed him from the Faculty Evaluation Committee, trumped up allegations of discrimination against him, publicized them, punished Professor Campos by removing him from teaching Property Law; and gave him only a reduced merit increase in 2023.

81.    As a direct result of Defendants' actions or inactions, Professor Campos suffered significant economic and non-economic damages in an amount to be determined at trial.

82.    Defendants' conduct was engaged in with malice or reckless disregard to the federally protected rights of Professor Campos.

## <u>PRAYER FOR RELIEF</u>

Plaintiff respectfully requests that this Court enter judgment in his favor and against each Defendant, and award him all relief allowed by law, including but not limited to the following:

A. Actual economic damages, back pay and front pay for failing to compensate Professor Campos fairly and similarly to his white colleagues;

B. Compensatory and consequential damages, including damages for emotional distress and humiliation, on all claims allowed by law in an amount to be determined at trial;

C. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

D. Attorneys' fees and the costs;

E. Pre- and post-judgment interest at the lawful rate; and

F. Any other appropriate relief at law and in equity that this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 23rd day of June, 2023

*s/ Daniel D. Williams*

Daniel D. Williams
**Hutchinson Black and Cook, LLC**
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Facsimile: (303) 442-6493
dan.williams@hbcboulder.com

*Attorney for Plaintiff*